**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** : | Case No.   2:19-cv-282 |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | |
| : | |
| **NINETY-TWO THOUSAND FORTY** : | **VERIFIED COMPLAINT FOR** |
| **AND 00/100 DOLLARS ($92,040.00) IN** : | **FORFEITURE IN REM** |
| **UNITED STATES CURRENCY,** : | |
| : | |
| **Defendant.** : | |

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendant in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

### NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce 21 U.S.C. § 881(a)(6), which provides for the forfeiture to the United States of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

### THE DEFENDANT IN REM

2. The defendant is Ninety-Two Thousand Forty and 00/100 Dollars ($92,040.00) in United States currency.   The Drug Enforcement Administration seized the defendant on or about August 24, 2018, from Todd Blank's luggage following a consensual encounter with him at the John Glenn Columbus International Airport.   The defendant has been deposited into the Seized Asset Deposit Fund, where it will remain during the pendency of this action.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant under 21 U.S.C. § 881(a)(6). This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

5. Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio and under 28 U.S.C. § 1395 because the defendant was seized in the Southern District of Ohio.

## BASIS FOR FORFEITURE

6. The defendant is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it represents property furnished or intended to be furnished by any person in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

## FACTS

7. On August 24, 2018, the Columbus, Ohio Airport Drug Enforcement Administration ("DEA") Group at John Glenn Columbus International Airport received information regarding a passenger identified as Todd Blank ("Blank") who was stopped in the airport's screening area when Agents of the Transportation Security Administration ("TSA") found what they believed to be a small amount of marijuana and some currency in one of Blank's

bags. TSA requested assistance from the Columbus Regional Airport Authority Police Department ("CRAA").

8. Upon arriving at the screening area, CRAA Officer Hussein G. Hartman ("Officer H. Hartman") approached Blank to speak to him about the contents of his bags. Blank advised that he had forgotten that he had marijuana in his bag and that he was medically advised to use it for his back pain. Officer H. Hartman told Blank that the form of marijuana he possessed was not legal in Ohio. Blank responded to "take it" because his flight was leaving soon. Officer H. Hartman asked Blank if he could look in his bag, and Blank consented. In Blank's backpack, Officer H. Hartman observed approximately six to seven bundled stacks of $20.00 bills.

9. When Officer H. Hartman asked Blank where he was flying, he said "Denver" and that his return ticket was for the next day. Blank further stated that he was going to Denver "to see friends." Blank did not provide Officer H. Harman with the names of his friends as requested. Instead, Blank said, "There's a lot of them. I don't know." Blank then stated that he was not going to discuss his friends and that he was going to Denver to buy glass.

10. Officer H. Hartman contacted the DEA's Airport Group for assistance. DEA Task Force Officer Eric Doyle ("TFO Doyle") responded to the screening area. Officer H. Hartman told TFO Doyle about the money and containers holding a personal use amount of marijuana found in Blank's bag.

11. TFO Doyle approached Blank in a way as not to block his egress, identified himself as a law enforcement officer, displayed his credentials, advised Blank that he was not in trouble and was free to leave at any time, and asked Blank if he would speak to him. Blank said that he understood and agreed to speak with TFO Doyle.

12. TFO Doyle observed that Blank was carrying a roller bag and a backpack and asked

Blank how much currency he was carrying and how the money was packaged. Blank initially said that he had $6,000.00 to $8,000.00 inside his backpack and then advised that he did not know exactly how much currency he had in his possession. TFO Doyle asked Blank for consent to search his backpack to which Blank consented.

13. In the bottom of Blank's backpack, TFO Doyle observed approximately six bundles of United States currency. TFO Doyle noted that each of the bundles had a $1,000.00 yellow band around it. TFO Doyle asked Blank where the currency had come from, and Blank responded that it came from a bank. TFO Doyle advised Blank that the money did not appear to be from a bank because the bands did not display a stamp from a clerk. When TFO Doyle asked whether Blank could provide bank receipts or any electronic verification from his bank about the currency withdrawal, Blank replied that he could not provide that information because he had taken the currency out over an unknown, extended period and that he had banded the currency himself.

14. While Blank was answering questions, TFO Doyle noticed that Blank was shaking and sweating profusely from his brow.

15. TFO Doyle asked Blank why he was traveling with the currency. Blank advised that he was going to buy decorative glass at an auction in Denver. Blank further stated that he bought and sold decorative glass as a side business, but he declined to provide any additional details.

16. TFO Doyle then asked Blank about his airline ticket purchase. Blank indicated that he had purchased a roundtrip ticket to Denver, Colorado, the day before his departure (August 23) and that he was scheduled to return to Columbus, Ohio, the next day (August 25). Blank stated that he might extend his trip to visit friends; however, Blank could not provide details about

where he intended to stay or the names of the friends he intended to visit. TFO Doyle asked Blank if he would like to discuss his travel further in the DEA's airport office. Blank agreed and accompanied TFO Doyle and Officer H. Hartman to the office.

17. Based on his training and experience, TFO Doyle knows that narcotics or money couriers often purchase airline tickets within 72 hours of travel to known source areas for illegal narcotics like Denver, Colorado, or to known destination areas for illegal narcotics like Columbus, Ohio.

18. Upon arriving at the office, DEA Task Force Officer Andrew D'Orazio ("TFO D'Orazio") joined the group. TFO D'Orazio identified himself as a law enforcement officer and advised Blank that he was free to leave the office at any time. Blank immediately responded that he wanted to leave.

19. Based on TFO Doyle's training and experience, his conversation with Blank, and his observations during their conversation, TFO Doyle believed that the currency in Blank's bag was related to illegal narcotics activity and subject to seizure. TFO Doyle advised Blank that he was free to leave, but he was going to seize the currency as narcotic proceeds. Blank stated that was fine and agreed to wait while TFO Doyle completed a DEA seizure receipt.

20. TFO D'Orazio asked Blank for consent to search his carry-on, roller bag while he was waiting for TFO Doyle to complete the seizure receipt. Blank consented to the search. TFO D'Orazio opened the roller bag and found a large amount of currency concealed within the zipper pockets and liner of the bag. The currency was banded identically to the currency that was found in Blank's backpack. TFO D'Orazio also found a solid form of hashish called "dab" or marijuana wax in Blank's shaving kit.

21. Officer H. Hartman informed Blank of his *Miranda* rights, which TFOs Doyle and

D'Orazio witnessed. Blank did not immediately ask to speak to an attorney.

22. TFO D'Orazio asked Blank why the currency was hidden under the liner of the bag. When Blank did not answer, TFO D'Orazio asked Blank if the currency belonged to him. Again, Blank did not answer and then advised that he did not want to discuss the currency further and that he wanted to speak to his legal counsel. TFO D'Orazio advised Blank that he was welcome to call anyone and then provided Blank with privacy at his request to make a call.

23. Blank entered a private office, closed the door, and made a phone call. After approximately ten minutes, Blank came out of the office, wished the officers a good day, and made his way to the office's exit. Before he left, the officers offered Blank the opportunity to sign the DEA seizure receipt, but Blank declined to sign or accept the receipt.

24. Officer H. Hartman seized the personal use marijuana and marijuana wax found in Blank's bags for destruction, advised Blank and the DEA officers that he did not need any additional information, and left the office.

25. Following Officer H. Hartman's departure, the DEA officers walked Blank back to the ticketing area of the airport and offered to speak to the ticketing agents to assist him with re-booking his flight without an additional charge. Blank declined and left the area.

26. After returning to the DEA airport office, TFO D'Orazio requested assistance from the CRAA K-9 Officer Jenelle Hartman ("Officer J. Hartman") and K-9 "Daron" to conduct a narcotic detection K-9 sniff on a package containing the seized currency. The money seized from Blank's bags was placed in a new United States Postal Service Priority Mail package ("USPS package") and sealed. The requested narcotic detection K-9 sniff consisted of two separate K-9 sniffs as follows.

    a. Ten USPS packages were placed in a circle in the DEA office.

    Five of the packages were empty, and five contained shredded, circulated currency. Officer J. Hartman and K-9 Daron entered the office and conducted a sniff of the ten packages. K-9 Daron did not show a change in behavior to any of the ten packages. Officer J. Hartman and K-9 Daron then left the area.

    b.    TFO D'Orazio replaced one of the packages with the USPS package that contained the money from Blank's bags. The location of the money was unknown to Officer J. Hartman. Officer J. Hartman and K-9 Daron returned to the room and conducted a sniff of the packages. K-9 Daron showed a positive alert for the odor of narcotics on one of the packages by stopping at the package, squaring off, and then scratching at the top of the package. TFO D'Orazio advised Officer J. Hartman that it was the package containing the money seized from Blank's bags.

27.    After an official count, it was determined that the United States currency hidden in Blank's bags totaled $92,040.00 in United States currency (the defendant) and consisted of 1 – $100.00 bill and 4,597 – $20.00 bills.

28.    Blank has a history of trafficking in drugs. On or about September 25, 1986, Blank was convicted of aggravated trafficking in drugs in Franklin County, Ohio, and was sentenced to eighteen months in prison.

29.    On October 31, 2018, the DEA received a claim from Blank asserting that he is the sole owner of the defendant. Blank did not include any documents or information supporting his claim.

30.    In or about mid-December 2018, TFO D'Orazio was conducting surveillance in the airport and saw Blank again. TFO D'Orazio greeted Blank and asked Blank if he would speak

to him. Blank stopped and agreed to talk to TFO D'Orazio. While they spoke, Blank advised that he was traveling on a direct flight to Los Angeles, California, to visit friends. Blank consented to allow TFO D'Orazio to search his carry-on bag. Upon searching the bag, TFO D'Orazio found glass smoking devices, known to TFO D'Orazio to be used for smoking or "vaping" marijuana products, and some computer equipment. TFO D'Orazio noted that Blank did not have any clothing in his carry-on bag and asked if he had any checked luggage. Blank advised that he did not and that he intended to borrow clothes from his friends in Los Angeles. Shortly thereafter, Blank left the area for his flight.

31. Based on the forgoing facts, the United States asserts that the defendant, a total of $92,040.00 in United States currency, represents property furnished or intended to be furnished by any person in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846. Therefore, the property is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

## CLAIM FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that:

(a) pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendant and to retain the same in its custody subject to further order of the Court;

(b) the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendant to assert, in conformity with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c) the forfeiture of the defendant to the United States be confirmed, enforced, and ordered by the Court;

(d) the Court thereafter order the United States to dispose of the defendant as provided by law; and

(e) the Court award the United States all other relief to which it is entitled, including the costs of this action.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

s/Deborah D. Grimes
DEBORAH D. GRIMES (0078698)
Assistant United States Attorney
Attorney for Plaintiff
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711 / Fax (513) 684-6385
Deborah.Grimes@usdoj.gov

## **VERIFICATION**

I, Eric M. Doyle, hereby verify and declare under the penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

1-29-19
Date

ERIC M. DOYLE, Task Force Officer
Drug Enforcement Administration

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
Ninety-Two Thousand Forty and 00/100 Dollars ($92,040.00) in United States Currency

(b) County of Residence of First Listed Plaintiff: Franklin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Franklin
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Deborah D. Grimes, Assistant United States Attorney
221 E. Fourth Street, Suite 400
Cincinnati, Ohio 45202    (513) 684-3711

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1  U.S. Government Plaintiff
[ ] 2  U.S. Government Defendant
[ ] 3  Federal Question (U.S. Government Not a Party)
[ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [X] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | | **PERSONAL PROPERTY** / **LABOR** | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| | | [ ] 751 Family and Medical Leave Act | | [ ] 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Forfeiture pursuant to 21 U.S.C. § 881(a)(6)
Brief description of cause:
Forfeiture

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 1/29/19
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____